# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RICHARD L. MITCHELL, | Case No. 2:18-cv-00646-RFB-EJY |
| Plaintiff, | **ORDER** |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*, | |
| Defendants. | |

Before the Court are cross Motions for Summary Judgment (ECF Nos. 177, 182) as well as Plaintiff's "Motion for Newly Discovered Information Regarding Arrest Protocol."[1] (ECF No. 199). For the following reasons, the Court denies Plaintiff's Motions and grants Defendants' Motion.

**I.  FACTUAL BACKGROUND**

The Court makes the following findings of undisputed facts and finds that there are no genuine disputes of material fact.

On the morning of December 9, 2017, Plaintiff Richard Mitchell entered a Speedee Mart gas station in Las Vegas. He walked up to the cashier, placing a black bag over the register. A handwritten note was attached to it: "put the money in here." The cashier threw the bag and told Mitchell to leave. Mitchell turned to pick up the bag and leave, but before doing so, he turned back to the cashier and said, "what if I had a gun?" The cashier dialed the police as Mitchell exited.

Nearly 30 minutes later, Mitchell entered a CVS not too far from the Speedee Mart. He

---

[1] Given Mr. Mitchell's *pro se* status, the Court construes his "Motion for Newly Discovered Information" as a motion to supplement the summary judgment record pursuant to FRCP § 56(e)(1). See Chavez v. Robinson, 817 F.3d 1162, 1167 (9th Cir. 2016) (holding that courts liberally construe *pro se* motions).

placed the same bag and note in front of the cashier, who told Mitchell that she could not open the register. While leaving to retrieve her manager, Mitchell proceeded behind the counter and attempted to open the register. Without success, he left the store. After his exit, the cashier spoke with her assistant manager, who subsequently dialed the police.

Mitchell did not steal anything from these convenience stores, and no dangerous weapon was displayed by Mitchell.

As a result of the CVS employee's call to the police, Las Vegas Metropolitan Police Department Dispatch requested officers to search for a suspect. Dispatch indicated that "a male demanded money, but didn't make any threats, then went behind the counter with a black bag and didn't take anything[.]" Sergeant Miguel Garcia ("Sgt. Garcia") responded. He drove to the CVS to review footage of Mitchell's attempted robbery. En route, Sgt. Garcia learned from dispatch that the CVS attempted robbery call was related to an earlier robbery attempt at a Speedee Mart. Regarding this attempt, dispatch informed Sgt. Garcia that the suspect "said he had a [gun] but none was seen." After communication with officers investigating the Speedee Mart attempted robbery, who sent Sgt. Garcia screen images of the Speedee Mart surveillance video, he determined that the suspect in both attempted robberies was the same individual. Police dispatch broadcasted a request for officers to patrol nearby convenience stores in search of the suspect.

Officers Miramontes and Jegge located Mitchell at a Terrible Herbst's convenience store ("Terrible's") by matching his vehicle description with dispatch's report. The officers parked behind Mitchell's stationary car in front of the Terrible's. Both officers and Mitchell exited simultaneously, standing approximately fifteen feet apart from each other. Officer Miramontes exited with his firearm drawn and Officer Jegge, his taser. Mitchell had exited his car carrying a baseball bat.

Immediately, Officer Miramontes began commanding Mitchell to drop the bat. Mitchell, on the other hand, responded with questions about why the officers had stopped him. A minute into the encounter, Miramontes radioed to dispatch: "we're giving commands but he's refusing to drop the baseball bat." Miramontes then addressed some of Mitchell's questions: "listen, man, you've been seen going around to different places, asking for money." Throughout, Mitchell

1  continued to hold the bat. During this time, supporting officers began arriving at the Terrible's.
2  Soon, Mitchell was surrounded by ten to thirteen officers and their vehicles. One of these officers
3  was Defendant Stephens, who arrived just over a minute into the encounter.

4      Officer Stephens exited his police vehicle with a beanbag shotgun drawn. Officers
5  continued their commands and Mitchell's noncompliance was unchanged. About a minute and
6  forty seconds from the initial stop, Stephens warned Mitchell: "if you do not put it down, I will
7  shoot you and it will hurt!" Mitchell still did not drop the bat. He was standing near his car on the
8  side of the store where there was an entrance and exit.

9      About two and a half minutes into the encounter, Sgt. Garcia, who had not yet arrived at
10 the Terrible's, radioed to Officer Stephens: "if he's not obeying commands, beanbag him and make
11 him drop the bat." A moment later, Officer Stephens yelled, "put it down, put it down!" and
12 subsequently warned: "Beanbag! Beanbag! Beanbag!" Four "beanbags" from the shotgun struck
13 Mitchell. He had been approximately 25 feet from Officer Stephens when he was hit. Sgt. Garcia
14 arrived and exited his vehicle after the third beanbag round.

15     Mitchell reacted adversely to the beanbags. He kicked his legs and moved back toward the
16 sidewalk and in front of the doors to the Terrible's. Subsequently, he wielded the bat in a swinging
17 stance and struck the glass door twice. While the officers continued with their commands to drop
18 the bat, Mitchell yelled: "Come on, man! Really! Come on, man!"

19     In the meantime, Officer Stephens announced that he was reloading the beanbag shotgun.
20 Again, he yelled: "Beanbag! Beanbag! Beanbag!" This time, however, the rounds did not deploy.
21 At this point, Mitchell opened the door to the Terrible's. Four gunshots rang out in two seconds.
22 Garcia and Mitchell were separated by approximately 35 feet when he fired his weapon. Mitchell
23 suffered a through and through gunshot wound above his right knee.

24     **II.**    **PROCEDURAL HISTORY**

25     Plaintiff Mitchell, acting *pro se*, attached a complaint to his application to proceed *in forma*
26 *pauperis* on April 10, 2018. ECF No. 1. On October 23, 2020, Mr. Mitchell filed an amended
27 complaint, naming Officer Stephens and Sgt. Garcia as defendants. ECF No. 18. On February 1,
28 2021, Mr. Mitchell filed the Operative, Second Amended Complaint ("SAC"). ECF No. 22. On

March 3, 2021, the Honorable Elayna J. Youchah, U.S. Magistrate Judge, screened the SAC and allowed Plaintiff's Fourth Amendment excessive force claims against Defendants Garcia and Stephens to proceed. ECF No. 23. On May 11, 2021, the Court accepted and adopted the Report and Recommendation in full. ECF No. 33.

After numerous extensions of time from both parties, Defendant Garcia moved for summary judgment on August 10, 2022. ECF No. 107. On the same day, Mr. Mitchell filed a "dispositive motion." ECF No. 105. At its hearing on the motion on March 23, 2023, the Court found *inter alia* that Defendant Stephens was not properly served and therefore stayed the case. ECF No. 123. On January 9, 2024, discovery was reopened. ECF No. 159.

Defendants Garcia and Stephens filed their instant Motion for Summary Judgment on May 24, 2024. ECF No. 177. The same day, Plaintiff filed another "dispositive motion." ECF No. 176. Given Plaintiff's *pro se* status, the Court noted deficiencies with the motion and extended the dispositive motion deadline. ECF No. 180. On June 13, 2024, Plaintiff filed his instant Motion for Summary Judgment. ECF No. 182. Both motions are fully briefed. ECF Nos. 183, 184, 185, 186, 187. On February 5, 2025, Mitchell filed a motion requesting the Court to consider newly discovered information for purposes of summary judgment. ECF No. 199. On February 19, 2025, Defendants responded. ECF No. 200. The Court's Order follows.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for

trial." Scott v. Harris, 550 U.S. 372, 380 (2007). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017).

The standard of review does not change when parties cross-move for summary judgment. See United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978). Thus, when faced with cross-motions for summary judgment on the same claims, the Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)). The Court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Id. Both parties in each instance receive the benefit of all reasonable inferences. ACLU of Nev. v. City of Las Vegas, 333 F.3d 1092, 1097 (9th Cir. 2003). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007).

### B. Motion to Supplement the Record

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e)(1). Whether to permit supplementation of the summary judgment record is within the sound discretion of the district court. See Resilient Floor Covering Pension Tr. Fund. Bd. of Trs. v. Michael's Floor Covering, Inc., 801 F.3d 1079, 1088 (9th Cir. 2015).

### IV. DISCUSSION

Mr. Mitchell brings two 42 U.S.C. § 1983 claims alleging as excessive the use of force employed by Officer Stephens and Sgt. Garcia on December 9, 2017, in violation of the Fourth Amendment. Before considering the cross-motions on the merits, the Court briefly addresses a threshold challenge under Heck v. Humphrey.

### A. Mitchell's Claims are not Barred by Heck v. Humphrey

As a threshold matter, Defendants assert that Mitchell's excessive force claims are barred under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Heck stands for the rule that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed[.]" Id. Defendants argue that success on Mitchell's claims would necessarily imply the invalidity of his conviction in state court to resisting arrest with a dangerous weapon. It necessarily implies as such, they argue, because an individual may only be convicted for resisting a lawful arrest.

Mitchell's § 1983 excessive force action is barred by Heck if the force that he challenges as unlawful is the same force that he was convicted of resisting. Martell v. Cole, 115 F.4th 1233, 1234 (9th Cir. 2024). Applying this analysis "requires looking at the factual basis for a conviction, regardless of whether that conviction is based on a jury verdict or a guilty plea." Lemos v. Cnty. of Sonoma, 40 F.4th 1002, 1008 (9th Cir. 2022) (*en banc*). Heck is no impediment "when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011).

In this case, nothing on the record clearly demonstrates the underlying factual circumstance of resistance to which Mitchell pleaded guilty. In other words, Mitchell's guilty plea is not predicated on a specific conduct of resistance. Accordingly, Mitchell's resistance with a dangerous weapon against Officer Miramontes might have been after any allegedly excessive forced was used, e.g., when he had fallen to the ground in the Terrible's while the bat remained in his hand. Given this possibility, the Court finds that Mitchell's success in this action would not necessarily imply the invalidity of his conviction. See Sanders v. City of Pittsburg, 14 F.4th 968, 971 (9th Cir. 2021) (finding that "if the alleged excessive force occurred *before* or *after* the acts that form the basis of the [resisting arrest] [state law] violation, even if part of one continuous transaction, the § 1983 claim doesn't 'necessarily imply the invalidity of a criminal conviction[.]'").

///

## B. Cross-Motions for Summary Judgment[2]

The Court next turns to the merits of the cross-motions for summary judgment on both of Mitchell's excessive force claims. Both of Mitchell's claims are brought under § 1983, which provides a private right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To prevail on these claims, Mitchell must establish two essential elements: (1) the violation of a right secured by the United States Constitution, and (2) that the alleged violation was committed by a person acting under color of state law. Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The second prong, whether Defendants acted under color of state law, is undisputed. See also Boer-Sedano v. Gonzales, 418 F.3d 1082, 1088 (9th Cir. 2005) (explaining that police officers are "prototypical" state actors).

The parties thus move for summary judgment as to the first prong, whether Defendants violated Mitchell's Fourth Amendment protection against excessive force. Claims of excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395-97 (1989). Under this standard, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In determining whether a particular use of force was unreasonable and thus in violation of the Fourth Amendment, a court considers the severity of the intrusion on the individual's Fourth Amendment rights, the government's interest in the use of force, and the balance between the gravity of the intrusion on the individual and the government's need for that intrusion. Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003).

Here, Mitchell contends that the undisputed facts render Officer Stephens' and Sgt. Garcia's uses of force objectively unreasonable, while Defendants argue that the same facts demonstrate that the force employed was objectively reasonable. Using the "objective reasonableness" test, the Court first considers whether the factual circumstances underlying each use of force entitle either party to summary judgment. In other words, the Court considers whether

---

[2] In his motion to supplement the summary judgment record, Mitchell requests the Court to consider "newly discovered information." Namely, Mitchell cites the fact that the officers, before using force, did not tell Mitchell that he was under arrest. Because this information was on the record before Mitchell filed his motion, the Court denies the motion to supplement as moot as it has considered Mitchell's arguments. See Resilient Floor, 801 F.3d at 1088.

each party successfully raises genuine issues of material fact in opposition to the others' motion for summary judgement, so as to preclude the Court's determination of reasonableness as a matter of law. Where, as here, camera footage captures the subject incident, the Court "view[s] the facts in the light depicted by the videotape." See Scott v. Harris, 550 U.S. 372, 378, 380-81 (2007). To the extent that a fact is not clearly established by video, the Court views the evidence "in the light most favorable to the nonmoving part[ies]." Id. at 380.

Importantly, "the objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional." City of Los Angeles v. Mendez, 581 U.S. 420, 428 (2017). Here, Mitchell alleges that Officer Stephens' use of less-lethal force and Sgt. Garcia's use of lethal force independently constituted violations of his constitutional rights. Accordingly, the Court conducts the analyses for each use of force in turn. For the following reasons, the Court finds that (1) the use of less-lethal force and (2) the use of lethal force were objectively reasonable as a matter of law.

After finding as such, the Court need not determine whether Defendants are entitled to qualified immunity. See, e.g., Aguilera v. Baca, 510 F.3d 1161, 1167 (9th Cir. 2007) (noting that if no constitutional violation occurred the court need not decide whether qualified immunity applies).

### i. *Stephens' Use of Less-Lethal Force*

The Court turns to the merits of the cross-motions relating to Defendant Stephens' use of a beanbag shotgun. Specifically, the Court balances "the gravity of the intrusion on the individual against the government's need for that intrusion . . . to determine whether the force used was 'greater than is reasonable under the circumstances.'" Espinosa v. City & County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010) (citation omitted).

#### 1. *Quantum of Force*

The Court finds that the deployment of the beanbag shotgun constituted a significant encroachment upon Mitchell's liberty interests. The severity or gravity of the intrusion is assessed "by considering the type and amount of force inflicted." Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018). Here, Officer Stephens fired four rounds from a beanbag shotgun, all of which

struck Mitchell. This less-lethal weapon is "a twelve-gauge shotgun loaded with . . . 'beanbag' round[s]," which consist of "lead shot contained in a cloth sack." Deorle v. Rutherford, 272 F.3d 1272, 1277 (9th Cir. 2001). In Deorle, the Ninth Circuit observed that the euphemism "beanbag" "grossly underrates the dangerousness of this projectile," which "can kill a person if it strikes his head or the left side of his chest at a range of under fifty feet." Id. at 1279 & n.13. In light of this weapon's dangerous capabilities, "[s]uch force, though less than deadly, . . . is permissible only when a strong governmental interest compels the employment of such force." Id. at 1280.

2. *Governmental Interest*

The Court turns to the factors used to weigh the government's interest in using the beanbag shotgun. Governmental interest in using force is evaluated "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396). These factors, however, are not exclusive. See Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010). Courts "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in Graham.'" Id. (quoting Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994)). Other factors relevant to the reasonableness of the force used include "the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." Isayeva v. Sacramento Sheriff's Dep't., 872 F.3d 938, 947 (9th Cir. 2017).

The Court makes the following findings of law relevant to the government's interest in using force under the factual circumstances of this case.

a. Mitchell Posed an Immediate Threat[3]

The "most important" Graham factor is whether the individual posed an "immediate threat

---

[3] Mitchell advances arguments related to the fact that he had been under the influence of drugs and alcohol. However, the Court's analysis looks to "objective" factors "from the perspective of a reasonable officer on the scene[.]" Graham v. Connor, 490 U.S. 386, 396 (1989). In doing so, the Court finds that the video record here "blatantly contradicts" Mitchell's contention that his near "mental and physical breakdown" was "obvious" to officers. See Scott, 550 at 380 (courts view facts in the light depicted by the record where it blatantly contradicts a party's version of the facts). Though this question might be material to the Court's analysis, the Court does not find any genuine dispute. See Deorle, 272 F.3d at 1283 (holding that whether it is or should be apparent to officers that an individual is emotionally disturbed "is a factor that must be considered").

to the safety of the officers or others." Glenn, 673 F.3d at 872. But "[a] simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." Deorle, 272 F.3d at 1281. Defendants argue that Mitchell posed an immediate threat by wielding, and refusing to drop, a baseball bat in a public space. Mitchell, on the other hand, argues that he did not pose a threat, that he had only planned to use the bat to prop up the hood of his car's engine and that he held onto it from fear and confusion as a result of his being on a "10-day drug and alcohol binge."

While a suspect's being armed is not by itself dispositive of Mitchell's claim, Glenn, 673 F.3d at 872, the Court nevertheless finds that the objective factors demonstrate that Mitchell posed an immediate threat to public safety. Before the beanbags were deployed, Mitchell gripped the bat as if he was prepared to swing it, regardless of whether he intended to hold it defensively or otherwise. In other words, the video footage makes clear that Mitchell did not hold the bat, as he claims, merely as a hood-prop or for any other purpose than to swing it. Such an assertion would be supported by the facts if, e.g., Mitchell had ensured the bat was pointed toward the ground in a nonthreatening manner or had dropped it. As Defendants point out, "[i]f the person is armed . . . a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013). Additionally, Mitchell was acting erratically and not responding to commands to drop the bat. He had been repeatedly asked and then commanded to drop the bat, but he refused. Most importantly, Mitchell was wielding this bat near the entrance/exit to the convenience store. Any person who exited the store would have been in immediate danger from potentially being struck by Mitchell with the bat. Consequently, Mitchell's wielding of the weapon in a position where any public person could have stumbled into his vicinity created an immediate public threat creating a strong government interest in using significant but nonlethal force.

         b. <u>The Severity of Mitchell's Crimes was Sufficient</u>

The Court turns to the question of whether Mitchell's prior crimes, why the police had stopped him in the first place, serve to compel a strong governmental interest. The Court finds that it does. Mitchell ultimately pleaded guilty to attempted robbery charges for his conduct prior to

the incident in question, Category B felonies in Nevada. See Nev. Rev. Stat. §§ 205.060, 200.380. In Miller v. Clark County, 340 F.3d 959 (9th Cir. 2003), the Ninth Circuit emphasized the government's interest in apprehending criminals, and particularly felons, as a factor "strongly" favoring the use of force. Miller, 340 F.3d at 964. Here, the officers reasonably suspected that Mitchell had attempted robberies at two different convenience stores, on the same day they confronted him at the convenience store. Accordingly, there existed a strong governmental interest in using force to apprehend Mitchell, particularly given that the officers had confronted him at a convenience store similar to those he had earlier attempted to rob. Moreover, from the perspective of the officers at the time of the incident, they knew that he had mentioned a gun in one of his previous robbery attempts. The Court therefore finds that a reasonable officer would find that Mitchell's crimes had been severe enough to compel a strong governmental interest.

### c. Mitchell's Resistance was Sufficiently Active

The Court also finds that the degree of Mitchell's resistance to officer commands served to compel a strong governmental interest in the use of less-lethal force. Courts distinguish between active and passive resistance. Bryan, 630 F.3d at 830. But "'[r]esistance,' . . . should not be understood as a binary state, with resistance being either completely passive or active. Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." Id. Courts "must eschew ultimately unhelpful blanket labels and evaluate the nature of any resistance in light of the actual facts of the case." Id. Here, while Mitchell's refusal to drop the bat might be permissibly characterized as passive resistance, his refusal combined with his erratic behavior still created a public safety threat. See Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012) (holding that "even passive resistance may support the use of some degree of governmental force if necessary to attain compliance"). Given, as the Court has found, that Mitchell posed an immediate threat to the safety of people inside the convenience store, his continued refusal to drop his weapon for several minutes strengthened the government's interest in using less-lethal force to apprehend Mitchell.

### d. Mitchell was Properly Warned

The Court finds that Mitchell was sufficiently warned that his refusal to release his weapon

would result in the use of force. "Appropriate warnings comport with actual police practice . . . [and] such warnings should be given, when feasible, if the use of force may result in serious injury." Deorle, 272 F.3d at 1284. Here, Defendant Stephens warned Mitchell by shouting "if you do not put the bat down, I will shoot you and it will hurt." He also yelled, just before firing, "beanbag, beanbag, beanbag." While the Ninth Circuit has held that the latter warning is improper by itself to warn a suspect of less-lethal force, for the individual might "not know what this statement meant, or perhaps even what a beanbag shotgun is[,]" Glenn, 673 F.3d at 876, the Court finds that Stephens' first warning was appropriate. Despite Defendant's failure to mention the imminent use of the beanbag shotgun in particular, Mitchell was explicitly warned, following Deorle, that his refusal would result in serious injury. 272 F.3d at 1284.

### e. Less Intrusive Alternatives were Generally Unavailable

Lastly, the Court finds that less intrusive alternatives were generally unavailable to the officers. Officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). However, "police are 'required to consider [w]hat other tactics if any were available,'" and if there were "clear, reasonable and less intrusive alternatives" to the force employed, that "militate[s] against finding [the] use of force reasonable." Bryan, 630 F.3d at 831 (quoting Headwaters Forest Def. v. Cnty. of Humboldt, 240 F.3d 1185, 1204 (9th Cir. 2000)). Here, the only concrete alternative argued by the parties was the potential use of a taser instead of a beanbag shotgun. In his declaration, Defendant Stephens testified that he had considered the use of his taser, but he determined that the thickness of Mitchell's coat would have rendered the taser ineffective. Mitchell does not provide any evidence to rebut this assertion by Defendant Stephens that he considered alternate means of apprehending Mitchell. Given the threat posed by Mitchell and his weapon, the Court generally finds no reasonable alternative to less-lethal force that would have sufficed to apprehend him.

### 3. *Balance of Interests*

Finally, the Court weighs "the intrusion into [Mitchell's] Fourth Amendment rights against [Stephens'] interest in apprehending [Mitchell] – that is, whether there is a reasonable fit between

[the] use of force and [Mitchell's] conduct." Seidner v. De Vries, 39 F.4th 591, 600 (9th Cir. 2022). As discussed, the Ninth Circuit requires that a "strong governmental interest compels the employment of" a beanbag shotgun. Deorle, 272 F.3d at 1280. Given the Court's findings relevant to the "objective reasonableness" factors above, the Court concludes that a strong governmental interest existed such that compelled the use of the beanbag shotgun. The strength of the government's interest in using the less-lethal force lied in (1) Mitchell's threat to employees and customers present in the convenience store, (2) the felonious character of his prior crimes including his mention of a firearm, (3) his refusal to drop the weapon he carried, (4) his warning that he would be subject to force if he continued to refuse, and (5) the general unavailability of less intrusive alternatives. As a matter of law, a jury could not reasonably conclude that the officers did not have a strong interest in apprehending Mitchell given these objective factors. As such, summary judgment is granted to Defendant Stephens on Mitchell's first excessive force claim.

### ii. *Garcia's Use of Lethal Force*

The Court turns to Mitchell's second claim, Sgt. Garcia's allegedly unconstitutional use of lethal force. As before, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Garner, 471 U.S. at 8 (1985). Where deadly force, which "'implicates the highest level of Fourth Amendment interests,'" is used, "the issue is determining whether the governmental interests at stake were sufficient to justify it." Vos v. City of Newport Beach, 892 F.3d 1024, 1031 (9th Cir. 2018) (quoting A.K.H. ex rel. Landeros v. City of Tustin, 837 F.3d 1005, 1011 (9th Cir. 2016)).

The inquiry into the governmental interest generally involves an evaluation of the Graham factors, such as the Court conducted above. However, in the context involved here, "the Supreme Court has crafted a more definitive rule" for cases involving the "use [of] deadly force to apprehend a fleeing suspect[.]" Orn v. City of Tacoma, 949 F.3d 1167, 1174 (9th Cir. 2020). Officers may only use deadly force against a fleeing individual if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Garner, 471 U.S. at 3. The Ninth Circuit has held that the emphasis of this particularized rule "is the

1  specification of the threat . . . not the putative difference between 'reasonable belief' and 'probable
2  cause,' that controls." Price v. Sery, 513 F.3d 962, 970 (9th Cir. 2008). The imperative question,
3  then, is whether Garcia had an objectively reasonable basis for believing that Mitchell posed a
4  threat of serious physical harm to anyone. Taking the facts as they are depicted by video, the Court
5  finds that Garcia's use of lethal force was justified by an objectively reasonable belief that Mitchell
6  posed an immediate threat of serious physical harm to others.

7  Simply put, the situation changed dramatically after Mitchell was struck with the beanbag
8  rounds. Moments after being hit, Mitchell moved to face the entrance doors of the convenience
9  store and swung the bat violently twice against the glass. Just after that, he moved to open the door
10  and enter the convenience store. He appeared out of control and willing to wield the bat. Given the
11  escalation of the situation, the Court finds that these objective factors taken together support
12  Garcia's reasonable belief that Mitchell posed a risk of serious bodily harm to the public.
13  Mitchell's violent swinging of the bat breaking the store windows and his movement to enter the
14  store created a "tense, uncertain, and rapidly evolving" circumstance. Graham, 490 U.S. at 397.
15  Thus, when Mitchell turned to enter the convenience store, the Court finds that Garcia "reasonably
16  believed such force was necessary to protect . . . others from death or serious bodily harm." Ting
17  v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991). Because the inquiry into "the use of deadly
18  force is tied to the nature of the threat, not to the quantum of evidence required to believe in it,"
19  the Court finds that Mitchell's (1) adverse reaction to the beanbags, (2) decision to swing the bat
20  strong enough to break the glass, and (3) movement into the store, where police believed there
21  were members of the public, provide a sufficient basis for demonstrating that a reasonable officer
22  would perceive a "threat of serious physical harm or worse." Price, 513 F.3d at 970.

23  The Court finds that Mitchell fails to raise a genuine dispute of fact as to the nature of his
24  threat. He argues that the decision to swing the bat and enter the store came about directly as a
25  result of the unreasonable deployment of the beanbag shotgun. First, the Court has already found
26  that the initial use of force with the beanbags was not unconstitutional. Additionally, even if such
27  force was unconstitutional, the Supreme Court has held that courts may not "use[] another
28  constitutional violation to manufacture an excessive force claim where one would not otherwise

exist." City of Los Angeles v. Mendez, 581 U.S. 420, 428 (2017). Accordingly, Mitchell's contention that an unconstitutional use of the beanbag rounds had directly caused the acts that were perceived by Garcia as threatening serious harm is immaterial to the Court's inquiry. Rather, the Court looks to the objective factors discussed above and finds that there existed an objective basis for the reasonable belief that Mitchell posed an imminent threat of serious harm.

The Court therefore grants summary judgment insofar as the use of lethal force by Defendant Garcia was objectively predicated on a reasonable belief of an imminent threat of serious harm such that the intrusion on Mitchell's constitutional right to be free of excessive force was justified.[4]

## V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 177) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 182) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Newly Discovered Information (ECF No. 199) is **DENIED**.

The Clerk of Court is instructed to close this case.

**DATED:** March 28, 2025.

                                                **RICHARD F. BOULWARE, II**
                                                **UNITED STATES DISTRICT JUDGE**

---

[4] The Court further finds the officers would also be entitled to qualified immunity even if the Court had not found their actions constitutional as there is no clearly established law indicating that their conduct in these circumstances was unlawful. Mullenix v. Luna, 577 U.S. 7, 11 (2015).